## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | Case Number: 3:19-CR-00068-M |
| | § | |
| BRAYLON RAY COULTER (1), | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court are Defendant Braylon Ray Coulter's *Pro Se* "Motion for Remedy, Cure, and Maintenance" [ECF No. 184], his *Pro Se* "Motion to Dismiss and Release" [ECF No. 185], and his *Pro Se* Motion to Dismiss for lack of Personal Jurisdiction [ECF No. 189]. For the reasons stated below, the Motions are DENIED.

### I.      Background

Defendant's Motions contain grounds for relief that are largely related. In his Motion for Remedy, Cure, and Maintenance, Defendant requests "cure and maintenance" on five grounds. First, Defendant seeks remedy from the "presumption that [he]… [is] 'a subject, citizen, resident, voter, taxpayer, servant, slave, person [artificial person] or chattel, or property,' to any form of government or equal under the color of law with corporations or politicians," under the Thirteenth and Fourteenth Amendments to the United States Constitution. ECF No. 184 at 1. Second, Defendant requests "cure and maintenance" from asserted fraud committed against him by the Court. *Id.* at 2. Third, Defendant requests "cure and maintenance" from "being forced against [his] will to take the place as [sic] a 'juristic person,' 'artificial person,' 'legal person,' and 'fictitious person,' which [Defendant alleges] is the all capital letter version 'ideal [sic] sonans' of [his] Christian name." *Id.* Fourth, Defendant challenges the Court's subject matter

jurisdiction and requests "cure and maintenance" from "being held in illegal confinement and illegal restraint[,] forced to take a position as a dummy corporation." *Id.* at 3. Fifth, Defendant claims full diplomatic immunity and seeks dismissal because he claims to be "an ambassador representative, proceeding from the Royal Court of the Kingdom of YHWH, the Supreme Sovereign Ruler of the Universe." *Id.*

Similarly, in his Motion to Dismiss and Release, Defendant seeks dismissal because he claims he is entitled to full diplomatic immunity as a citizen of The Kingdom of YHWH and an ambassador for Christ. ECF No. 185 at 2–3. Defendant repeats this request for dismissal and full diplomatic immunity in his Motion to Dismiss for Lack of Personal Jurisdiction. ECF No. 187 at 2–3. In the Motion to Dismiss for Lack of Personal Jurisdiction, Defendant also challenges the constitutionality of the charges brought against him in the Second Superseding Indictment. *Id.* at 3–4. Third, Defendant challenges this Court's personal and subject matter jurisdiction, claiming that because of his alleged ambassador status, the Supreme Court has original jurisdiction over this case. *Id.* at 8–9.

Defendant's requested relief is unclear and difficult to discern. However, the Court will address Defendant's Motions to the extent it can understand their grounds. On the whole, the Court concludes that Defendant has not shown that he is entitled to the relief sought.

## II.      Thirteenth and Fourteenth Amendments

To the extent Defendant seeks remedy, cure and maintenance under the 13th or 14th Amendments, *see* ECF No. 184 at 1, his request is denied.

The Thirteenth Amendment "simply forbids slavery and involuntary servitude, [and] grants to Congress power to enforce this prohibition by appropriate legislation." *Clyatt v. United States*, 197 U.S. 207, 216 (1905). The Fourteenth Amendment "prohibit[s] the states from

abridging the privileges or immunities of citizens of the United States; from depriving them of

life, liberty, or property without due process of law, and from denying to any the equal protection

of the laws." *Id.* at 217.  Defendant's Motion alleges no facts indicating a violation of his rights

under the Thirteenth or Fourteenth Amendments.  Therefore, the Court declines to grant cure and

maintenance to Defendant.

### III.    Fraud

Defendant has not alleged facts in his Motion that could lead to the conclusion that a

fraud has been perpetuated against him.  His request is therefore denied.  *Id.*

### IV.    Personal Jurisdiction

To the extent Defendant challenges personal jurisdiction because he is not a person as

defined by the law, his Motions are denied as moot.

18 U.S.C. § 2 (a) provides that "[w]hoever commits an offense against the United States

or aids, abets, counsels, commands, induces or procures its commission, is punishable as a

principal."[1]  Defendant has self-identified as a "living, breathing, flesh and blood . . . real man."

ECF No. 184 at 1.  He has therefore admitted that he is within the category of those who may be

charged with a crime under the Federal Penal Code.

The Second Superseding Indictment properly names Coulter as Defendant.  He has

appeared in court and filed multiple *pro se* pleadings in response to the Second Superseding

Indictment.  *E.g.*, ECF Nos. 157, 158, 184, 185, 186, 187 and 188.  Defendant further

acknowledges that the caption on the Second Superseding Indictment includes "the all-capital-

---

[1] This includes both human individuals, and corporations.  *See, e.g.*, *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 603 (5th Cir.  1981) ("a corporation can be convicted of criminal charges of conspiracy based solely on conspiracy with its own employees");  *see also United States v. Wise*, 370 U.S. 405, 417 (1962) (Harlan, J., concurring) ("[T]he fiction of corporate entity, operative to protect officers from contract liability, had never been applied as a shield against criminal prosecutions).  Thus, even if Defendant's corporate allegations of personhood had merit, that structure would be insufficient to shield him from liability.

letter version . . . of [his] Christian name." Therefore, the Indictment applies to Defendant. *See Russell v. U.S.*, 969 F.Supp 24, 25 (W.D. Mich. 1997) (rejecting petitioner's claim that "because his name is in all capital letters on the summons, he is not subject to the summons" as "completely without merit, patently frivolous"); *Jaeger v. Dubuque County*, 880 F.Supp 640, 643 (N.D. Iowa 1995) ("The court finds Jaeger's arguments concerning capitalization otherwise specious. The court routinely capitalizes the names of all parties before this court in all matters, civil and criminal, without any regard to their corporate or individual status"); *see also In re Shugrue*, 221 B.R. 394, 395 (Bankr. W.D. Tex. 1998) (rejecting similar claim).

To the extent Defendant argues that the capitalization of his name constitutes an *idem sonans*, he is still properly before this Court. *Idem sonans* is "a legal doctrine preventing a variant spelling of a name in a document from voiding the document if the misspelling is pronounced the same way as the true spelling." *Black's Law Dictionary* 862 (10th ed. 2014). In *Grannis v. Ordean*, the Supreme Court found that a defendant received sufficient notice of a suit against him despite the defendant's name being misspelled in the pleadings. *Grannis v. Ordean*, 234 U.S. 385, 395 (1914). The Court noted that *idem sonans* was still valid law, but reasoned that the issue at hand was not whether the misspelling was an *idem sonans* of the defendant's true name; rather, the issue was whether the defendant understood the pleading as being addressed to him. *See id.* ("Even in names, due process of law does not require ideal accuracy. In the spelling and pronunciation of proper names there are no generally accepted standards, and the well-established doctrine of *idem sonans* . . . is a recognition of this."); *id.* at 398 ("In determining this, we need not confine ourselves to the test of *idem sonans.*"). Defendant clearly understands that the pleadings refer to him, as Defendant has filed numerous motions *pro se. See, e.g.*, ECF Nos. 157, 158, 184, 185, 186,

- 4 -

187, and 188.  While Defendant may prefer a different spelling of his name, he is properly

before this Court.

## V.        Diplomatic Immunity

To the extent Defendant seeks to invoke diplomatic immunity, his Motions are denied.

Courts have previously declined diplomatic immunity for "Ambassadors of Christ."  *See,*

*e.g.*, *United States v. Vilcauskas*, No. CR190075201PHXDGC, 2021 WL 1515535, at *1 (D.

Ariz. Apr. 16, 2021).  Defendant has not explained why he has diplomatic immunity in

connection with his professed religious beliefs.

Defendant is not a diplomatic officer of a state to which the United States grants

diplomatic immunity.  Diplomatic immunity is granted through 22 U.S.C. § 254a, which grants

diplomatic immunity to "members of a mission" as defined "within the meaning of the Vienna

Convention and any missions representing foreign governments, individually or collectively,

which are extended the same privileges and immunities, pursuant to law, as are enjoyed by

missions under [the Vienna Convention on Diplomatic Relations of April 18. 1961]".  22 U.S.C.

§ 254a.  The Vienna Convention extends diplomatic immunity to member "States."  *See e.g.*,

Vienna Convention on Diplomatic Relations, art. (April 18. 1961) 23 U.S.T. 3227.  The

definition of a "State" comes from the Montevideo Convention on the Rights and duties of States

of December 26, 1933.  The Montevideo Convention requires that a state have "a permanent

population . . . a defined territory . . . a government; and . . . capacity to enter into relation with

other states."  Convention on Rights and Duties of States (Montevideo Convention), Art. 1 (Dec.

26, 1933) 49 Stat. 3097, 3100.

As defined by Defendant, the Body of Christ and the Kingdom of YHWH includes the

entire universe.  However, the universe is not bounded or defined.  In fact, it is constantly

expanding.  *See, e.g.*, Hawking, S. W. "*Perturbations of an Expanding Universe*." The Astrophysical Journal, 1966, 548.  Merriam-Webster defines "define" as "to mark the limits of: determine with precision or exhibit clearly the boundaries."  *Define*, Webster's New International Dictionary (3rd ed. 1993).  Because the universe is constantly expanding, its limits cannot be precisely marked at any given time.  Therefore, it does not have a defined territory.  Consequently, the universe does not meet the legal definition of a "State," and Defendant does not meet the legal definition of an ambassador under the Vienna Convention who might be entitled to diplomatic immunity.

Furthermore, as a person who is "permanently resident" within the United States, Defendant is ineligible for diplomatic immunity as a matter of policy.  "A member of a mission, other than a diplomatic agent, 'permanently resident in' the United States for purposes of Article 38(2) of the VCDR and Article 71(2) of the VCCR enjoys no privileges and immunities pursuant to the Vienna Conventions".  United States Department of State Office of Foreign Missions, *Diplomatic and Consular Immunity, Guidance for Law Enforcement and Judicial Authorities* at p. 9 n. 4 (August 2018), https://www.state.gov/wp-content/uploads/2019/07/2018-DipConImm_v5_Web.pdf; *see also* 22 U.S.C. § 254d.  Defendant has not alleged that he is a citizen of another country, or that he previously resided or plans to reside outside of the United States.  He has therefore has not alleged nor can he correctly allege that he is eligible for diplomatic immunity.

Defendant's own Motions further undermine his claims to diplomatic immunity.  As an attachment to his Motion to Dismiss for Lack of Personal Jurisdiction [ECF No. 187], Defendant filed a "Truth Affidavit in the Nature for a Peace Declaration" ("Truth Affidavit").  ECF No. 187 at pp. 10–11. The Truth Affidavit is sworn by Defendant and witnessed.  *Id.* at 11.  In it,

Defendant swears that he was born in "STATE FILED IN." *Id.* at 10. The Truth Affidavit was filed in Texas along with the Motion. *Id.* Because Defendant has thus sworn to being born in Texas, he is a United States Citizen by Birth. *See* INA 301(a) and INA 301(b). Although he attempts to renounce his United States citizenship in the same affidavit, *id.* at 10, he has not alleged that he followed the rigorous formal process required for renouncing citizenship. *See* 8 U.S.C. § 1481.

Within the Truth Affidavit, Defendant also states that he is a "natural born soul on the land 'STATE FILED IN,' a republic or inhabitant of the land 'STATE FILED IN.'" *Id.* Finally, Defendant does not explain why his citizenship, even if assumed to be foreign, would protect him from indictment for crimes committed in the Northern District of Texas.

To the extent Defendant seeks to challenge any underlying felony which makes it unlawful to possess a firearm as charged in Second Superseding Indictment Count 1, his Motion is DENIED.

The time for Defendant to have appealed the underlying conviction certainly has passed. Defendant was indicted for unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) on February 2, 2019. Any underlying felony convictions would necessarily have occurred before that date. As Defendant has not alleged that any such convictions are on appeal, arguments regarding the validity of the underlying charge is moot and cannot now be collaterally attacked.

To the extent Defendant attempts to challenge the constitutionality of the statutes he is alleged to have violated in the Second Superseding Indictment, his Motion is denied.

Count 1 in the Second Superseding Indictment is unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). This statute has repeatedly been upheld

for more than fifty years.  *See, e.g.*, *D.C. v. Heller*, 554 U.S. 570, 626–27 (2008) ("Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . ."); *United States v. Donofrio*, 450 F.2d 1054, 1056 (5th Cir. 1971) ("laws regulating the conduct of convicted felons have long been upheld as valid exercises of the legislative function").  Defendant gives no reasons why this Court should rule otherwise.

The Second Superseding Indictment also charges Defendant with count 2, conspiracy to obstruct an official proceeding, in violation of 18 U.S.C. § 1512(k) and 18 U.S.C. § 1512(c)(2). 18 U.S.C. § 1512 has repeatedly been upheld as constitutional.  *See, e.g.*, *United States v. Tyler*, 281 F.3d 84, 91–92 (3d Cir. 2002); *United States v. Thompson*, 76 F.3d 442, 452 (2d Cir. 1996); *see also U.S. v. Nelson*, 242 Fed. Appx. 164 (5th Cir. 2007) (specifically upholding 18 U.S.C. § 1512(c)).  Defendant's Motion presents no basis for the Court to rule otherwise.

### I.      Jurisdiction

To the extent Defendant otherwise challenges the personal and subject matter jurisdiction of this Court, his Motion is DENIED.

Defendant appeared for an initial appearance and arraignment [ECF Nos. 6 and 11], which is sufficient to establish personal jurisdiction.  *See United States v. Donnell*, 557 F. App'x 335, 337 (5th Cir. 2014) (defendant's "personal appearance before the district court during his initial appearance secured the district court's personal jurisdiction over him").

This Court also has subject matter jurisdiction over Defendant. "The district courts of the United States have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231.  If a federal grand jury returns an

indictment, which charges the defendant with violations of federal law, then 18 U.S.C. § 3231

empowers the court to hear the criminal case.  *See, e.g.*, *United States v. Longoria*, 259 F.3d 363,

365 (5th Cir. 2001), *on reh'g en banc*, 298 F.3d 367 (5th Cir. 2002). When examining a motion

to dismiss under Rule 12, the court must take the indictment's allegations as true.  *United States v.*

*Sampson*, 371 U.S. 75, 78–79 (1962).  Here, on August 19, 2020, a federal grand jury returned a two-

count indictment against Defendant.  ECF No. 61.  The Second Superseding Indictment sufficiently

alleges facts to support each charge.  *Id.*  Because each count of the indictment charges a violation of

United States law, this Court has jurisdiction.

Further, the charged crimes are alleged to have been committed in the Northern District

of Texas, making this court a proper venue for this case.  *See* U.S. Const. art. III, § 2, cl. 3

(providing that a criminal trial must be held "in the state where the said Crimes . . . have been

committed"); Fed. R. Crim. Proc. 18 (providing that, except as otherwise permitted, "the

government must prosecute an offense in a district where the offense was committed").  The

Second Superseding Indictment alleges, in relevant part:

> On or about July 15, 2018, *in the Dallas Division of the Northern District of Texas*, the
> defendant, Braylon Ray Coulter, knowing that he had been convicted of a crime punishable
> by imprisonment for a term exceeding one year, did knowingly possess, in and affecting
> interstate and foreign commerce, a firearm[.]
>
> . . .
>
> Beginning on about July 15, 2018, and continuing thereafter through on or about August 3,
> 2020, the exact dates being unknown to the Grand Jury, *in the Dallas Division of the*
> *Northern District of Texas and elsewhere*, the defendant, Braylon Ray Coulter (hereafter
> "Coulter"), and at least one other person known to the Grand Jury, did knowingly combine,
> conspire, confederate, and agree with each other to corruptly obstruct, influence, and impede
> an official proceeding[.]

ECF No. 61 at 1–2 (emphasis added).  The Second Superseding Indictment is therefore factually

sufficient to support venue in the Northern District of Texas.

## VI. Future Criminal Exposure

Finally, in light of Coulter's numerous *pro se* motions,[2] the Court takes the opportunity to remind Mr. Coulter that his pleadings are public records and his filings could expose him to further potential legal liability. For instance, it is a federal crime to falsely present oneself as an ambassador. *See United States v. Hillman*, 610 F. App'x 574, 577 (7th Cir. 2015) (listing cases); *United States v. Charczenko*, 1995 WL 7961, at *3 (6th Cir. 1995) (unpublished order) (defendant convicted under 18 U.S.C. § 915 after identifying himself to police officer at roadblock as an "ambassador of Christ"). The Court urges Coulter to exercise appropriate discretion in the filing of motions.

For the reasons stated above, Defendant's *Pro Se* "Motion for Remedy, Cure, and Maintenance" [ECF No. 184], his *Pro Se* "Motion to Dismiss and Release" [ECF No. 185], and his Motion to Dismiss for Lack of Personal Jurisdiction [ECF No. 189] are DENIED.

**SO ORDERED**.

August 9, 2021.

_____
BARBARA M. G. LYNN
CHIEF JUDGE

---

[2] Defendant has filed numerous motions and "affidavits" since he began to represent himself on April 19, 2021. *See, e.g.*, ECF Nos. 158, 159, 163 178. 179, 184, 185, 186, 187, 188; *see also* ECF Nos. 170 (denying ECF No. 163), 182 (denying ECF No. 179), 189 (denying ECF No. 184), 190 (denying ECF No. 185), 191 (denying ECF No. 187), and 192 (denying ECF No. 188).